UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )   Index No. 2:22-cv-04040

LONG ISLAND ANESTHESIOLOGISTS PLLC,                )   Hon. Hector Gonzalez
                                                    )
                    Plaintiff,                      )
            vs                                       )
                                                    )
UNITEDHEALTHCARE INSURANCE COMPANY OF NEW          )
YORK INC., as Program Administrator, THE EMPIRE PLAN )
MEDICAL/SURGICAL PROGRAM, and MULTIPLAN INC.,        )
                                                    )
                                                    )
                    Defendants.                     )
                                                    )
                                                    )
- - - - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - )

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ........................................................2
    A.    LIA's Original Complaint ...............................................................................2
    B.    The Court Dismisses LIA's Complaint.............................................................3
    C.    LIA's Proposed Amended Complaint................................................................4
    D.    The *Joseph* Case ..........................................................................................5

LEGAL STANDARD .......................................................................................................6

ARGUMENT.....................................................................................................................6

I.      THE NEW YORK SUPREME COURT'S RULING IN THE PARALLEL
       STATE ACTION IS DISPOSITIVE AND PRECLUSIVE. .............................7

II.     LIA'S PROPOSED AMENDMENTS DO NOT DEMONSTRATE ANTITRUST
       INJURY. .............................................................................................................9
    A.    The proposed amendments do not demonstrate an actual adverse effect on
          competition in the relevant market. ...................................................................9
    B.    LIA's Proposed Amended Complaint does not set forth the "something
          more" that is required to show antitrust injury based upon lowered
          reimbursement rates. .......................................................................................13

III.    LIA'S "NEW" ALLEGATIONS DO NOT ALLEGE A PLAUSIBLE
       CONSPIRACY....................................................................................................14

IV.    LIA IGNORES ITS UNJUST ENRICHMENT CLAIM. ...............................17

V.     LIA IGNORES DEFENDANTS' ARGUMENTS FOR DISMISSAL THAT THE
       COURT DID NOT REACH. ...............................................................................18

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE(S)**

*Anesthesia Assocs. of Ann Arbor, PLLC v. Blue Cross Blue Shield of Mich.*,
   2021 U.S. Dist. LEXIS 174021 (E.D. Mich. Sept. 14, 2021).................................11

*Angelico v. Lehigh Valley Hosp., Inc.*,
   184 F.3d 268 (3d Cir. 1999) .....................................................................................12

*Assocs. Cap. Serv. Corp. of New Jersey v. Fairway Private Cars, Inc.*,
   590 F. Supp. 10 (E.D.N.Y. 1982).............................................................................9

*Balaklaw v. Lovell*,
   14 F.3d 793 (2d Cir. 1994) ...............................................................................9, 10

*Bologna v. Allstate Ins. Co.*,
   138 F. Supp. 2d 310 (E.D.N.Y. 2001)......................................................................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) .................................................................................................9

*Caithness Long Island II, LLC v. SEG Long Island LLC*,
   2019 U.S. Dist. LEXIS 174866 (E.D.N.Y. Sept. 30, 2019) ...........................14, 17

*Force v. Facebook, Inc.*,
   304 F. Supp. 3d 315 (E.D.N.Y. 2018)......................................................................6

*Giakoumelos v. Coughlin*,
   88 F.3d 56 (2d Cir. 1996) .........................................................................................7

*In re Aluminum Warehousing Antitrust Litig.*,
   2014 U.S. Dist. LEXIS 121435 (S.D.N.Y. Aug. 29, 2014)....................................13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   801 F.3d 758 (7th Cir. 2015) ..................................................................................15

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   2021 U.S. Dist. LEXIS 221509 (S.D. Fla. Nov. 17, 2021) ....................................16

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) ...................................................................................14

*Joseph et al. v. Corso et al.*,
   No. 902227-22 (N.Y. Sup. Ct.)........................................................................passim

*Joseph et al. v. Corso et al.*,
   No. CV-23-1477 (App. Div. 3rd Dep't.) ...............................................................3, 6

*Kartell v. Blue Cross Blue Shield of Mass., Inc.*,
   749 F.2d 922 (1st Cir. 1984)...........................................................13

*Korshin v. Benedictine Hosp.*,
   34 F. Supp. 2d 133 (N.D.N.Y. 1999) ..........................................10, 13

*Lucente v. IBM Corp.*,
   310 F.3d 243 (2d Cir. 2002) ..........................................................6

*MacDermid Printing Sols. LLC v. Cortron Corp.*,
   833 F.3d 172 (2d Cir. 2016) ..........................................................11

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
   470 U.S. 373 (1985) ...................................................................7

*Mathews v. ADM Milling Co.*,
   2019 U.S. Dist. LEXIS 97564 (W.D.N.Y. June 11, 2019)....................10

*Mich. State Podiatry Ass'n v. Blue Cross & Blue Shield of Mich.*,
   671 F. Supp. 1139 (E.D. Mich. 1987) ...........................................13

*Milanese v. Rust–Oleum Corp.*,
   244 F.3d 104 (2d Cir. 2001) ..........................................................6

*N.Y. Medscan LLC v. N.Y. Univ. Sch. of Med.*,
   430 F. Supp. 2d 140 (S.D.N.Y. 2006)...........................................12

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
   11 N.Y.3d 105, 894 N.E.2d 1, 863 N.Y.S.2d 615 (2008) ....................8

*Reddy v. Puma*,
   2006 U.S. Dist. LEXIS 67848 (S.D.N.Y. Sept. 19, 2006) ...................12

*Relevent Sports, LLC v. Fédération Internationale De Football Ass'n*,
   551 F. Supp. 3d 120 (S.D.N.Y. 2021) ...........................................17

*Schwartz v. Public Adm'r*,
   24 N.Y.2d 65, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969) ...................8

*Schweitzer v. Crofton*,
   935 F. Supp. 2d 527 (E.D.N.Y. 2013)..............................................6

*Solow v. Delit*,
   1993 U.S. Dist. LEXIS 11362 (S.D.N.Y. Aug. 13, 1993).....................8

*Uddoh v. United Healthcare*,
   2017 U.S. Dist. LEXIS 19415 (E.D.N.Y. Feb. 10, 2017) .....................2

*Ulrich v. Moody's Corp.*,
 2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. Mar. 31, 2014) .................................................11

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
 627 F.3d 85, 103 (3d Cir. 2010) ...........................................................................................14

**STATUTES**

28 U.S.C. § 1738 .........................................................................................................................7

**OTHER AUTHORITIES**

LABOR STATISTICS, *Occupational Employment and Wages, May 2021, 29-1211,*
 *Anesthesiologists*, https://www.bls.gov/oes/current/oes291211.htm (last visited Mar. 8, 2024)
 ..................................................................................................................................................10

## INTRODUCTION

The Court should deny Plaintiff Long Island Anesthesiologists' (LIA) motion for leave to amend. The Court previously dismissed LIA's antitrust claims because LIA (i) failed to plead facts establishing an antitrust injury and (ii) failed to alleged facts establishing a horizontal conspiracy between the Defendants. *See* Dkt. 50 (MTD Order). LIA's proposed amended complaint not only fails to fix those problems, it doubles down on the same defects identified by the Court. On antitrust injury, LIA proposes to add a handful of new allegations describing injury to individual anesthesiologists but offers nothing to show a broader injury to competition or the competitive process. And although LIA offers a handful of new allegations concerning the United–MultiPlan relationship, it fails to allege that they are horizontal competitors or that their vendor relationship is anything other than a standard business relationship.

LIA's failure to cure the defects that this Court previously identified is enough for the Court to deny its motion for leave to amend. Or the Court could deny LIA's motion because LIA fails to address Defendants' arguments requiring dismissal that the Court did not need to reach in its previous orders. But there is now an even more compelling reason: LIA's entire antitrust theory is barred by a preclusive and dispositive ruling from the New York Supreme Court in *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct.). LIA's claim in this case is built on a misperception that New York's Empire Plan did something wrong when it applied the federal No Surprises Act (instead of New York's Surprise Bill Law) when reimbursing out-of-network emergency anesthesiology services. The *Joseph* decision confirms that the Empire Plan applied the law correctly; it also confirms that the Empire Plan, not United, made that choice. United and MultiPlan cannot be held liable for ancillary services they provided the Empire Plan in support of the Plan's now-confirmed correct application of federal law.

## BACKGROUND[1] AND PROCEDURAL HISTORY

UnitedHealthcare Insurance Company of New York is the chosen third-party administrator for the Empire Plan—the state-sponsored health plan for New York state employees and their families. PAC ¶¶ 71, 79–80. United does not fund reimbursements under the Empire Plan; instead, the New York Department of Civil Services ("DCS") sponsors and funds the Plan. *Id.* ¶¶ 71–76, 79; *Uddoh v. United Healthcare*, 2017 U.S. Dist. LEXIS 19415, at *8–9 (E.D.N.Y. Feb. 10, 2017) ("[B]ecause the Empire Plan is self-insured, the Department of Civil Service bears all responsibility for claims and expenses under or against it, for which it receives state funding and makes annual budget requests to the New York State Division of the Budget."). United contracts with MultiPlan to communicate with providers about reimbursement questions. PAC ¶¶ 151–53.

### A. LIA's Original Complaint

Last year, LIA brought antitrust and unjust enrichment claims against United and MultiPlan in this Court. *See* Dkt. 1, Compl. In that complaint, LIA alleged that in January 2022, the Empire Plan began applying the federal No Surprises Act, instead of New York's Surprise Bill Law, when reimbursing LIA and other practices for out-of-network anesthesiology services. *Id.* ¶¶ 95–100. LIA alleged that the Empire Plan's decision to follow the federal law was made "at United's insistence" or "at United's behest." *Id.* ¶¶ 4, 96, 101. But LIA did not allege that United had actual authority or control over that decision. LIA alleges that the reimbursement rates under the federal law are lower than the prevailing rates under New York's statute. *Id.* ¶¶ 144–45. Specifically, LIA complained that under the federal No Surprises Act, it saw its reimbursements reduced by more than 80%. *Id.* ¶¶ 120–21.

---

[1] Defendants incorporate the factual backgrounds as presented in their motions to dismiss. *See* Dkts. 30, 31.

In response to the reduction in reimbursements, LIA alleged that it invoked the federal dispute resolution process. Dkt. 1, Compl. ¶ 118. LIA alleged that it "started receiving written communications from [MultiPlan]" which "identif[ied] itself as working with United" in efforts to resolve billing disputes. *Id.* ¶¶ 123–25. LIA complained about the volume of letters from MultiPlan, alleging that it was "impossible to keep up with the flood of correspondence and still keep up with the ability to routinely bill and collect for other anesthesia services." *Id.* ¶ 131. It also complained that some of those letters imposed rushed and unreasonable response deadlines. *Id.* ¶¶ 125–27.

LIA brought five claims in the Complaint: monopsony and attempt to monoposonize; antitrust conspiracy under federal and state law; and unjust enrichment. *See* Dkt. 1, Compl. LIA's theory was that United used its monopsony power to drive down reimbursement rates and has conspired with MultiPlan to exclude competition. *See generally id.*

## B.    The Court Dismisses LIA's Complaint

On October 10, 2022, United and MultiPlan each moved to dismiss LIA's complaint. *See* Dkts. 30, 31. United and MultiPlan identified a host of defects in LIA's complaint, each ground separately and on its own requiring dismissal of the complaint. *See* Dkts. 30, 31. Those grounds were:

- The Empire Plan is not subject to New York's Surprise Bill Law.

- LIA did not plead antitrust injury.

- LIA did not allege a plausible agreement to support an antitrust conspiracy nor did its conspiracy allegations satisfy the rule of reason.

- LIA failed to allege plausible Section 2 monopsony claims.

- LIA's unjust enrichment claims were duplicative and failed to allege the requisite elements.

*See generally* Dkts. 30, 31.

On November 21, 2023, this Court granted Defendants' motions to dismiss. *See* MTD Order. The Court dismissed LIA's federal antitrust claims, holding that LIA did not allege antitrust injury and failed to allege a plausible horizontal conspiracy between United and MultiPlan. *See id.* The Court declined to exercise supplemental jurisdiction over LIA's state law claims but noted that its state law antitrust claim would fail for the same reasons as the federal antitrust claims. *Id.* at 16 n.11. The Court allowed LIA to move for leave to amend but cautioned that LIA's brief should "explain why leave to amend should be granted, including a discussion of how the proposed amended complaint cures the deficiencies identified [in the Order] and in Defendants' motions to dismiss." *Id.* at 17.

### C. LIA's Proposed Amended Complaint

LIA filed its motion for leave to amend and Proposed Amended Complaint on February 2, 2024. *See* Dkt. 54-2, PAC. LIA brings the same five causes of action under the same theory, namely that United used its monopsony power to drive down reimbursement rates and has conspired with MultiPlan to exclude competition. *See generally id.* Attempting to address the Court's holding on antitrust injury, LIA now alleges that two other anesthesia providers also experienced lower reimbursement rates when the Empire Plan began applying the No Surprises Act. *Id.* ¶¶ 200–21. LIA also alleges that—if this is allowed to continue—providers will have to curtail their services. *Id.* ¶¶ 208, 215. According to LIA, this possibility, combined with a pre-existing shortage of physicians, is causing hospitals to close operating rooms, delay procedures, and extend wait times. *Id.* ¶¶ 207–08, 213, 215, 218.

Notably, LIA still does not allege that United had actual authority or control over the decision to apply the federal No Surprises Act, which led to the reduction in reimbursement rates. Unable to do so, LIA now alleges that United is responsible for "most day-to-day decisions regarding the operation of the Plan and the provision of benefits." PAC ¶ 80. According to LIA,

4

this includes "the determination and payment of reimbursement rates for medically necessary services." *Id.* ¶ 85.

LIA also adds allegations concerning the supposed conspiracy between United and MultiPlan. *See* PAC. LIA concedes that it appears that MultiPlan is a "United vendor engaging in isolated communications with out-of-network providers." *Id.* ¶ 162. However, LIA claims that MultiPlan is actually a competitor of United in arenas unrelated to this litigation. *Id.* ¶¶ 162–63, 168. Specifically, LIA claims that MultiPlan "is a horizontal competitor of United because both [MultiPlan] and United own and operate Preferred Provider Organization (PPO) networks." *Id.* ¶ 163. It also notes that MultiPlan is "like United, [] a health insurance payer." *Id.* ¶ 41.[2] Finally, LIA spends several paragraphs discussing MultiPlan's analytics services provided to health insurers, including to Cigna, Elevance, Centene, and Humana. *Id.* ¶¶ 170–80

### D.     The *Joseph* Case

On March 28, 2022, three months before filing this lawsuit, LIA joined other plaintiffs in filing a declaratory judgment action in the New York Supreme Court against the Empire Plan, DCS, DFS, and United, seeking a declaration that "at all times, the Empire Plan, and its provision of benefits and reimbursement, remain subject to New York insurance law, including the Surprise Bill Law." *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct. March 28, 2022), Dkt. 2. Like the original complaint, many of the factual allegations in LIA's proposed amended complaint are copied directly from allegations that LIA previously included in its state-court complaint.

But since the filing of the original complaint, the New York Supreme Court has ruled in that case, ruling against LIA and other plaintiffs. *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y.

---

[2] There appears to be an error in the numbering on the Proposed Amended Complaint. Although numbered paragraph 41, this fact follows after paragraph 168. *See* PAC ¶ 168.

Sup. Ct. July 13, 2023), Dkt. 95. It held that "the Surprise Bill Law is not an applicable insurance law to the Empire Plan." *Id.* at 5–6. The Court also dismissed United from the case for a separate reason: The Court held that "United cannot and does not, control the Empire Plan's coverage or reimbursement decisions." *Id.* The *Joseph* plaintiffs did not appeal the Court's decision to dismiss United. *See Joseph et al. v. Corso et al.*, No. CV-23-1477 (App. Div. 3rd Dep't.), Dkt. 10 at 5 n.1.

## LEGAL STANDARD

Courts may deny a motion for leave to amend a complaint where the proposed amendment would be futile. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile."). An amendment to a pleading is futile "if the proposed new claim could not withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 556 (E.D.N.Y. 2013) (citing *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)). Courts in this District regularly deny motions for leave to amend where the proposed amendments fail to cure defects identified in the Court's earlier decision dismissing the claims. *See, e.g., Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 332 (E.D.N.Y. 2018) ("Moreover, as the proposed amendments fail to correct the deficiencies identified by the court's decision dismissing Plaintiffs' first amended complaint, the court concludes that it is appropriate to deny the motion with prejudice.").

## ARGUMENT

LIA's proposed amendments to its complaint are futile. The amendments fail to cure the deficiencies identified by the Court and are virtually silent with regard to the deficiencies identified in Defendants' motions to dismiss. The Court should deny leave to amend because (i) the New York Supreme Court's ruling in the parallel state action is dispositive and preclusive; (ii) LIA

(still) does not allege antitrust injury; (iii) LIA's conspiracy claims (still) are not plausible; and (iv) LIA (still) fails to allege plausible monopsony claims.

## I.     THE NEW YORK SUPREME COURT'S RULING IN THE PARALLEL STATE ACTION IS DISPOSITIVE AND PRECLUSIVE.

LIA's antitrust claims are predicated on its view that DCS incorrectly followed the federal No Surprises Act instead of New York's Surprise Bill Law—resulting in lower reimbursements for LIA and other anesthesiology practices that serve the Empire Plan as out-of-network providers. In a parallel state court case, the New York Supreme Court rejected that view, holding that "the Surprise Bill Law is not an applicable insurance law to the Empire Plan," and, in any event, "United cannot and does not, control the Empire Plan's coverage or reimbursement decisions." *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct.), Dkt. 95 at 5–6. Those holdings are both preclusive and dispositive of LIA's antitrust claims.[3]

A federal court must give a state court ruling the same preclusive effect as that ruling would have in state court. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); 28 U.S.C. § 1738 (state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."). Absent a reversal on appeal, principles of *res judicata* or collateral estoppel would require New York state courts to follow the *Joseph* ruling and prevent

---

[3] When this Court granted Defendants' motions to dismiss, it found that it did not need to reach the *Joseph* question, explaining that LIA had not sufficiently pleaded antitrust injury regardless of whether the New York or Federal law controls the Empire Plan's reimbursements, and that the parties had not briefed what, if any, preclusive effect the New York Supreme Court's ruling has on this case. ECF No. 50 at 6 n.6. Defendants take this opportunity to explain the preclusive effect of *Joseph*.

LIA from re-litigating the same issues.[4] "Accordingly, this Court is also bound." *Solow v. Delit*, 1993 U.S. Dist. LEXIS 11362, at *8 n.2 (S.D.N.Y. Aug. 13, 1993).

The *Joseph* decision precludes LIA's antitrust claims in this case. LIA's allegations borrow heavily from the *Joseph* complaint; it claims that it was harmed when the Empire Plan began applying reduced reimbursement rates under the federal No Surprises Act as opposed to New York's Surprise Bill Law. As alleged, LIA has no damages—and thus no legal claim—if the Empire Plan's decision to apply the federal law was correct. But that is exactly what the *Joseph* court held. *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct.), Dkt. 95 at 6 ("[T]he State defendants['] usage of the federal No Surprises Act to resolve out-of-network reimbursement disputes is wholly rational and reasonable and not contrary to the clear wording of any applicable statutes and/or regulations."). LIA fails to explain how antitrust liability or damages can exist if DCS's statutory interpretation is correct.

The *Joseph* decision is dispositive for another reason: DCS—not United—made the choice to follow the federal No Surprises Act. LIA admits that United is only a third-party administrator for the Empire Plan. PAC ¶¶ 71, 79–80. As the *Joseph* Court held, "United cannot and does not, control the Empire Plan's coverage or reimbursement decisions." *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct.), Dkt. 95 at 5–6. Not only is that conclusion correct, the plaintiffs in

---

[4] *See Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) ("[T]he doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue 'has necessarily been decided in the prior action and is decisive of the present action,' and (2) there has been 'a full and fair opportunity to contest the decision now said to be controlling.'" (quoting *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969))); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122, 894 N.E.2d 1, 863 N.Y.S.2d 615 (2008) (under New York law, *res judicata* "bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." (cleaned up)).

*Joseph* (including LIA) elected not to appeal that aspect of the Court's decision. Applying the *Joseph* holding means LIA cannot even attribute the conduct complained of here to the Defendants, which is fatal to its claims.

## II. LIA'S PROPOSED AMENDMENTS DO NOT DEMONSTRATE ANTITRUST INJURY.

When this Court reviewed LIA's initial complaint, the Court held, consistent with United and MultiPlan's arguments, that LIA failed to allege antitrust injury. Order on MTD at 8. The Court emphasized that federal and state antitrust statutes were enacted to protect competition, but "[t]hey are not general prohibitions of all types of activity which may result in economic harm to any individual." *Assocs. Cap. Serv. Corp. of New Jersey v. Fairway Private Cars, Inc.*, 590 F. Supp. 10, 13 (E.D.N.Y. 1982). Thus, to state a claim under the antitrust laws, a plaintiff must show that the challenged conduct has resulted in an "antitrust injury"—that is, "injury of the type the antitrust laws were intended to prevent and that flow from that which makes defendants' acts unlawful." *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). LIA's proposed amendments do nothing to cure its failure to allege antitrust injury.

### A. The proposed amendments do not demonstrate an actual adverse effect on competition in the relevant market.

When this Court dismissed LIA's original complaint, it held that LIA did not allege "an *actual* adverse effect on competition as a whole in the relevant market[.]" Order on MTD at 9 (citing *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 319 (E.D.N.Y. 2001)). LIA contends that it has fixed this problem with allegations that Defendants' conduct caused (1) harm to other anesthesia providers, (2) an increase in the price of anesthesia services, and (3) a reduction to the quality and output of anesthesia services. Mot. to Amend at 4–8. Those proposed amendments cannot salvage LIA's flawed theory.

*First*, LIA offers new allegations that two other anesthesia providers also experienced lower reimbursement rates when the Empire Plan began applying the No Surprises Act. PAC ¶¶ 200–21. But those new allegations still say nothing about *competition* in the relevant market—which includes more than 3,000 anesthesiologists. *See* U.S. BUREAU OF LABOR STATISTICS, *Occupational Employment and Wages, May 2021, 29-1211, Anesthesiologists*, https://www.bls.gov/oes/current/oes291211.htm (last visited Mar. 8, 2024).[5] Although LIA alleges that it and two other practices' individual reimbursement rates have fallen, "[f]rom the standpoint of the providers of anesthesiology services, the market remains . . . unaltered." *Balaklaw*, 14 F.3d at 799. LIA and other anesthesiologists are free to negotiate a participation agreement with the Empire Plan, and they are likewise free to compete for admitting privileges at Good Samaritan Hospital and other hospitals. Like its original complaint, LIA's proposed amended complaint "does not assert that . . . in-network providers are recouping more lucrative reimbursements under the Empire Plan . . . or that anesthesiologists are choosing to go in-network with respect to the Empire Plan . . . rather than remaining independent." Order on MTD at 10. There is no "foreclosure of competition" in the relevant market for the provision of anesthesiology services, "and consequently, [there is] no antitrust injury." *Id.*; *see also Korshin v. Benedictine Hosp.*, 34 F. Supp. 2d 133, 138–39 (N.D.N.Y. 1999) (holding that anesthesiologist did not allege antitrust injury where there were "no indications that [the plaintiff] and other anesthesiologists [were] excluded, or substantially limited, in the broader market for employment").

---

[5] The Court can judicially notice U.S. Bureau of Labor statistics. *See, e.g.*, *Mathews v. ADM Milling Co.*, 2019 U.S. Dist. LEXIS 97564, at *10 (W.D.N.Y. June 11, 2019) ("As the statistical evidence from the Bureau of Labor offered by Plaintiff comes from the official website of the U.S. Department of Labor, the Court could take judicial notice of it.").

*Second*, LIA still fails to show that the Empire Plan's (correct) decision to apply the federal No Suprises Act will result in higher healthcare costs. "Antitrust law in the healthcare setting focuses on protecting patients from prices that are too high." *Anesthesia Assocs. of Ann Arbor, PLLC v. Blue Cross Blue Shield of Mich.*, 2021 U.S. Dist. LEXIS 174021, at *21 (E.D. Mich. Sept. 14, 2021). In its earlier decision, this Court observed that "the complaint [did] not credibly allege that patients have had to or necessarily will have to pay more for anesthesia services as a result of the decreased reimbursement rates." Order on MTD at 9. LIA claims that its new allegations fix that problem. But LIA offers nothing new. As it did in its earlier complaint (Dkt. 1, Compl. ¶¶ 39–55), LIA again alleges that the decision to follow the lower reimbursement methodology is part of a multi-step long-term play to (i) reduce reimbursement rates for New York anesthesiologists in the short-term; (ii) which will drive anesthesia providers out of business; (iii) which will, in turn, benefit United's parent company, which owns another subsidiary called OptumCare that also employs anesthesiologists. PAC ¶¶ 39–61.

Those allegations are just as implausible as they were last time. "To prove an *actual* adverse effect on price, a plaintiff must show just that—that prices actually increased" (*MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 184 (2d Cir. 2016)), not that there is some hypothetical long string of attenuated circumstances where prices might go up many years down the line. *Ulrich v. Moody's Corp.*, 2014 U.S. Dist. LEXIS 145898, at *91 (S.D.N.Y. Mar. 31, 2014) (dismissing plaintiff's Section 1 claim where plaintiff asserted that the "alleged agreement has harmed competition . . . generally, but fail[ed] to back up [the] assertion with any facts").

*Third*, LIA claims that it alleges that United and MultiPlan's actions have had adverse effects on the quality and output of anesthesia services. LIA argues that "courts have repeatedly

found allegations regarding the reduced availability and number of providers and a decline in quality of patient care to be sufficient to state an antitrust injury." Mot. to Amend at 6. As an initial matter, LIA (still) does not allege that even one anesthesiologist has closed its doors or stopped practicing because of the Empire Plan's choice to follow federal law. At most, LIA alleges that one anesthesia practice has "lost more than 10% of its physician staff due to financial distress" due to "the low Empire Plan rates." PAC ¶ 212. LIA does not allege how many physicians the practice employs (thus, the Court does not know if "more than 10%" represents two or twenty physicians). It does not even allege that those physicians are no longer practicing anesthesiologists.[6]

LIA's cited cases miss the mark. *See* Mot. to Amend at 6 (citing *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 276 (3d Cir. 1999); *Reddy v. Puma*, 2006 U.S. Dist. LEXIS 67848, *10–12 (S.D.N.Y. Sept. 19, 2006); *N.Y. Medscan LLC v. N.Y. Univ. Sch. of Med.*, 430 F. Supp. 2d 140, 148–49 (S.D.N.Y. 2006)). *Angelico* did not address the alleged conduct's effect on the market. *See* 184 F.3d at 276 ("Although the District Court considered Angelico's proffered evidence of an actual anticompetitive market effect, we will not address that evidence because it is appropriate that the District Court reconsider it within the legal framework we have outlined."). And in *Reddy*, the plaintiff, who accounted for 35-45% of the market, alleged wholesale exclusion from that market by his competitor defendants. 2006 U.S. Dist. LEXIS 67848, at *12. No such allegations exist here. LIA and the other anesthesiology practices remain free to compete and free to negotiate a participation agreement with the Empire Plan. Finally, in *N.Y. Medscan*, the plaintiff alleged that the defendants reduced competition in the provision and price of services. 430 F. Supp. 2d at 147. Again, no such facts are applicable here where LIA and others remain free to compete.

---

[6] LIA's Proposed Amended Complaint also states that the "Great Resignation" and other economic and societal factors are causing a significant shortage of clinicians. PAC ¶¶ 207–08. But those factors existed before and independent of the Empire Plan's decision to follow federal law.

At bottom, LIA has alleged nothing more than three anesthesia practices' dissatisfaction with reduced reimbursements offered under a single health plan for a limited category of surprise bills. LIA has failed to allege the sort of market-wide injury to competition that is necessary to establish antitrust injury. "Without any allegation as to how market-wide competition will be affected, the complaint fails to allege a claim on which relief may be granted." *Korshin*, 34 F. Supp. 2d at 138–39.

## B. LIA's Proposed Amended Complaint does not set forth the "something more" that is required to show antitrust injury based upon lowered reimbursement rates.

The Court has already recognized that a "health plan lowering reimbursement rates paid to a physician practice is generally insufficient to establish antitrust injury." Order on MTD at 12. Instead, there must be "something more." *See* Mot. to Amend at 9;  *see also Kartell v. Blue Cross Blue Shield of Mass., Inc.*, 749 F.2d 922, 925 (1st Cir. 1984) ("Antitrust law rarely stops the buyer of a service from trying to determine the price or characteristics of the product that will be sold.").[7] As it did last time, LIA again argues that the "something more" is that United "exercise[d] its monopsony power to lower reimbursement rates in part through a horizontal conspiracy" with MultiPlan. Mot. to Amend at 9. But its allegations still fail to establish any sort of horizontal conspiracy.

MultiPlan and United are not horizontal competitors, thus they cannot be in a horizontal conspiracy. *See In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 121435, at *114 (S.D.N.Y. Aug. 29, 2014) ("Plaintiffs claim to have alleged a horizontal conspiracy in restraint of trade, but they do not allege that . . . defendants are horizontal competitors. In the

---

[7] *See also Mich. State Podiatry Ass'n v. Blue Cross & Blue Shield of Mich.*, 671 F. Supp. 1139, 1152 (E.D. Mich. 1987) (an argument "that podiatrists make less money from BCBSM than previously . . . is insufficient to state an antitrust violation").

absence of the latter, the former cannot be correct."). LIA resists that conclusion, now adding several paragraphs regarding United and MultiPlan's alleged status as competitors in the "PPO network business." Mot. to Amend at 10 (citing PAC ¶¶ 163–69). But LIA's conspiracy allegations in this case do not concern PPO networks or its relationships with PPO clients. This case concerns only MultiPlan's function as United's contracted billing vendor for the Empire Plan. *See generally* PAC. "Horizontal conspiracies involve agreements among competitors at the same level of competition to restrain trade, such as agreements among manufacturers to fix prices for *a given product and geographic market*, or among distributors to fix prices for *a given market*." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 179 (2d Cir. 2004) (emphasis added). LIA's alleged market in this case is the provision of medically necessary anesthesiology services. *See* PAC ¶ 276. There remains no allegation that United and MultiPlan compete against one another in that market.

As this Court held, "[i]n the absence of proof of a conspiracy or 'something more,' Plaintiff's arguments are insufficient to establish that it suffered antitrust injury." Order on MTD at 13 (citing *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 103 (3d Cir. 2010)).

## III. LIA'S "NEW" ALLEGATIONS DO NOT ALLEGE A PLAUSIBLE CONSPIRACY.

The proposed amended complaint fails to set forth plausible allegations of a conspiracy between United and MultiPlan. LIA must offer "direct or circumstantial evidence that reasonably tends to prove that the defendant and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *See Caithness Long Island II, LLC v. SEG Long Island LLC*, 2019 U.S. Dist. LEXIS 174866, at *9–10 (E.D.N.Y. Sept. 30, 2019). When it dismissed the original complaint, this Court held that—even if LIA had alleged antitrust injury—it failed to allege facts that support a finding that United and MultiPlan had a conscious commitment to a common scheme. Order on MTD at 14. LIA claims that the proposed amended complaint cures

that defect issue by explaining "the mechanism by which United has implemented its anticompetitive scheme." Mot. to Amend. at 13. That "mechanism," LIA explains, is United engaging MultiPlan to employ various bad-faith negotiating pressure tactics to suppress out-of-network rates. *Id.* And LIA alleges United and MultiPlan kicked off this process with an "agreement" in 2017 that United's out-of-network reimbursements were "too high" and needed to be "brought back into alignment." *Id.* at 15.

The "new" allegations do not solve LIA's problem. LIA has, at most, alleged that "MultiPlan contracted with United to handle direct communication with providers as part of the federal IDR process with respect to claims for reimbursement related to treatment provided to patients insured by the Empire Plan." Order on MTD at 15. But a business relationship does not by itself constitute an illegal Section 1 agreement, and LIA offers no factual allegations showing a "conscious commitment" to engage in unlawful conduct. *See, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 763 (7th Cir. 2015) (rejecting conspiracy claim where defendants' communications "could be understood as a part of a legitimate business relationship as readily as they could be understood as a part of a conspiracy" and there was no "single communication that suggests a meeting of the minds to fix prices"). LIA has otherwise alleged no facts to substantiate that there was some sort of meeting of the minds to engage in some sort of illicit reimbursement negotiation strategies.

LIA also asks the Court to find it has pleaded an actionable conspiracy based on the following: "[MultiPlan], when entering the arrangement with United, knew that it was facilitating a price coordination scheme among competitors. Indeed, [MultiPlan's] entire marketing program was how its repricing methodology was used by all the major health payers." Mot. to Amend at 16; PAC ¶ 272. That allegation is totally detached from the Empire Plan, the federal No Surpises

Act, the New York Surprise Bill Law, and every other factual allegation. Thus, even accepting that allegation as true, it does not come close to plausibly alleging a conspiracy and is simply irrelevant to this case.

In its order dismissing LIA's original complaint, the Court highlighted the following deficiencies:

> The complaint, for example, does not assert that MultiPlan knew the reimbursement rates it sought were lower than the rates that United had previously offered, that MultiPlan believed the rates were below competitive levels, that MultiPlan had any role in helping United or the Empire Plan determine appropriate reimbursement rates, or that MultiPlan intended to help United drive out competition.

Order on MTD at 14. The proposed amendments do not address any of those issues. Instead, the proposed amended complaint adds an allegation that "[MultiPlan's] actions are not simply isolated communications or recommendations. Rather, they grow out of longstanding arrangements between [MultiPlan] and large health plan payers, including United, to use [MultiPlan] repricing tools as an agreed-upon methodology to suppress out of network reimbursement." PAC ¶ 265. LIA offers no explanation as to how the MultiPlan–United relationship differs from MultiPlan's relationship with its many other clients. *See* PAC ¶ 180 ("[MultiPlan's] clients for these services include not only United, but also Cigna, Elevance, Centene, and Humana."); Mot. to Amend at 20 ("almost all major health payers use [MultiPlan] to reprice their out-of-network claim using the exact same analytic tools, thereby yielding virtually identical repricing amount, leaving the providers little alternative but to accept them"). The new paragraphs that follow just purport to tell the story of how MultiPlan came to occupy this alleged place in the market. *See* PAC ¶¶ 256–73. Because LIA alleges that MultiPlan performs the same services for its other clients, the "obvious alternative explanation to the facts underlying the alleged conspiracy" is that United and MultiPlan

are engaged in normal business dealings. *Relevent Sports, LLC v. Fédération Internationale De Football Ass'n*, 551 F. Supp. 3d 120, 128 (S.D.N.Y. 2021).

Instead of addressing the deficiencies the Court identified in the original complaint, LIA goes all-in on trying turn a normal business relationship into a conspiracy. That is not enough. *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 U.S. Dist. LEXIS 221509, at * 73 (S.D. Fla. Nov. 17, 2021) (allegations that one defendant "is an important business partner of the other Defendants" insufficient to support plausible inference of conspiracy).

LIA also claims the new allegations explain that "United, far from simply recommending action to the Empire Plan, has substantial control over the Empire Plan by setting and determining reimbursement rates, selecting in-network providers, processing and adjudicating claims, paying claims, and negotiating dispute resolutions." Mot. to Amend at 22. Inasmuch as these allegations purport to elevate United's role beyond that of a third-party administrator to the Empire Plan, they should be disregarded. *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct.), Dkt. 95 at 5–6. ("United cannot and does not, control the Empire Plan's coverage or reimbursement decisions."). And even if they are not, there are no allegations that MultiPlan had a role in setting rates. In short, the proposed amendments to the complaint do not support a finding that MultiPlan and United had a "conscious commitment to a common scheme." *Caithness Long Island II* 2019 U.S. Dist. LEXIS 174866, at *10.

## IV. LIA IGNORES ITS UNJUST ENRICHMENT CLAIM.

Neither the proposed amended complaint nor LIA's motion for leave to amend addresses its unjust enrichment claim. Thus, at the very least, LIA has abandoned the claim. But even if LIA had addressed the claim, it cannot overcome its fatal flaw: As a self-funded plan, *the Empire Plan*—not United—has the obligation to pay for anesthesia services. *See, e.g., Joseph*, No.

902227-22, Dkt. 95 at 3 ("The Empire Plan is a governmental self-funded insurance plan . . . ."). United has not been enriched at LIA's expense.

## V.    LIA IGNORES DEFENDANTS' ARGUMENTS FOR DISMISSAL THAT THE COURT DID NOT REACH.

When the Court allowed LIA to move for leave to amend its complaint, it cautioned that LIA's brief should "explain why leave to amend should be granted, including a discussion of how the proposed amended complaint cures the deficiencies identified [in the Order] *and in Defendants' motions to dismiss*." MTD Order at 17 (emphasis added). LIA's motion fails to explain how its proposed amendments cure the issues identified in Defendants' motions to dismiss that were not addressed by the Court. Defendants incorporate those arguments—which LIA fails to engage with—by reference.[8] Each would justify dismissal of the proposed amended complaint, and Defendants would move to dismiss the proposed amended complaint on the same grounds if LIA is granted leave to amend.

## CONCLUSION

For the foregoing reasons, the Court should deny LIA's motion for leave to file an amended complaint.

---

[8] *See* ECF No. 31-1 at § IV (conspiracy claims do not satisfy the rule of reason); *id.* at § VI (LIA fails to plead claims for monopsonization and attempted monopsonization); ECF No. 30-1 at §§ 3–4.

Dated: March 18, 2024

ALSTON & BIRD LLP
*/s/Karl Geercken*

Karl Geercken
90 Park Avenue
New York, New York 10016
(212) 210-9400
karl.geercken@alston.com

Brian D. Boone (admitted *pro hac vice*)
Emily McGowan (admitted *pro hac vice*)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280
(704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com

D. Andrew Hatchett (admitted *pro hac vice*)
Jordan Edwards (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309
(404) 8811-7000
andrew.hatchett@alston.com
jordan.edwards@alston.com

*Attorney for Defendant UnitedHealthcare*
*Insurance Company of New York*

-AND-

PHELPS DUNBAR LLP

*/s/ Errol J. King, Jr.*
Errol J. King, Jr. (*pro hac vice*)
Craig L. Caesar (*pro hac vice*)

Katherine C. Mannino (*pro hac vice*)
Taylor J. Crousillac (*pro hac vice*)
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone: (225) 376-0219
Facsimile: (225) 381-9197
Email:  errol.king@phelps.com
craig.caesar@phelps.com
katie.mannino@phelps.com
taylor.crousillac@phelps.com

Aimee Leigh Creed
D'ARCAMBAL OUSLEY & CUYLER BURK LLP
40 Fulton Street
New York, NY 10038
Telephone: (212) 971-3175
Fax: (212) 971-3176
Email:  acreed@darcambal.com

*Attorneys for Defendant MultiPlan, Inc.*