# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

LONG ISLAND ANESTHESIOLOGISTS PLLC,

                                  Case No.: 2:22-cv-04040-HG

        Plaintiff,

v.

UNITEDHEATLHCARE INSURANCE COMPANY
OF NEW YORK INC., as Program Administrator,
THE EMPIRE PLAN MEDICAL/SURGICAL
PROGRAM and MULTIPLAN INC.,

        Defendants.

---

## MULTIPLAN, INC.'S MOTION TO
## DISMISS PLAINTIFF'S AMENDED COMPLAINT

**PLEASE TAKE NOTICE THAT** Defendant MultiPlan, Inc. ("MultiPlan"), by and through its undersigned counsel, will move the Honorable Hector Gonzalez of the United States District Court of the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, NY 11201, at a time and date to be set by the Court, for an Order dismissing with prejudice the Amended Complaint filed by Plaintiff Long Island Anesthesiologists PLLC ("LIA" or "Plaintiff") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

MultiPlan requests that the Court dismiss the Amended Complaint in its entirety with prejudice. This Motion is based on the Memorandum of Law filed concurrently herewith, all pleadings on file with this Court, and on such oral argument as may be presented at the hearing on this matter.

July 18, 2024

Respectfully Submitted,

*/s/ Errol J. King, Jr.*

Errol J. King *(pro hac vice)*
Katherine C. Mannino *(pro hac vice)* Taylor J. Crousillac *(pro hac vice)* Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100 Baton Rouge, LA 70802
Telephone: (225) 346-0285
Fax: (225) 381-9197
Email: errol.king@phelps.com
       katie.mannino@phelps.com
       taylor.crousillac@phelps.com

-and-

Craig L. Caesar *(pro hac vice)*
Phelps Dunbar LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130
Telephone: (504) 584-9272
Fax: (504) 568-9130
E-mail: craig.caesar@phelps.com

-and-

Aimee Leigh Creed
d'Arcambal Ousley & Cuyler Burk LLP
40 Fulton Street
New York, NY 10038
Telephone: (212) 971-3175
Fax: (212) 971-3176
E-mail: acreed@darcambal.com


Attorneys for Defendant MultiPlan, Inc.

PD.46114810.1

**<u>CERTIFICATE OF SERVICE</u>**

I, Errol J. King, Jr., certify that on July 18, 2024, I caused the foregoing Motion to Dismiss and Memorandum of Law in Support of the Motion to Dismiss to be filed with Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

Dated: July 18, 2024

*/s/ Errol J. King, Jr.*
Errol J. King, Jr.

PD.46114810.1

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

LONG ISLAND ANESTHESIOLOGISTS PLLC,

                                       Case No.: 2:22-cv-04040-HG

        Plaintiff,

v.

UNITEDHEATLHCARE INSURANCE COMPANY
OF NEW YORK INC., as Program Administrator,
THE EMPIRE PLAN MEDICAL/SURGICAL
PROGRAM and MULTIPLAN INC.,

        Defendants.

---

## MULTIPLAN, INC.'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ................................1

PROCEDURAL AND FACTUAL BACKGROUND...............................................................2

ARGUMENT ...............................................................................................................................6

      I.      Standard for Dismissal Under Rule 12(b)(6) ...................................................6

      II.     Plaintiff Has, Once Again, Failed to Meet the Plausibility Standard of
              *Twombly/Iqbal* ...................................................................................................6

      III.    *Joseph* is Dispositive and Preclusive ..............................................................8

      IV.    Plaintiff Has Still Failed to Make Out Its Sherman Act Claim.........................9

      V.     Plaintiff Has Failed to Make Out Its Donnelly Act Claim.................................13

      VI.    Plaintiff Has No Unjust Enrichment Claim Against MultiPlan.........................14

CONCLUSION............................................................................................................................15

Page(s)

**Cases**

*Abbott Lab'ys v. Adelphia Supply USA*,
   No. 15CV5826CBALB, 2017 WL 5992355 (E.D.N.Y. Aug. 10, 2017) .................................14

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016) ....................................................................................8, 12

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ..................................................................................10

*Arista Records LLC v. Lime Grp. LLC*,
   532 F. Supp. 2d 556 (S.D.N.Y. 2007) ...................................................................12

*Armstrong v. McAlpin*,
   699 F.2d 79 (2d Cir. 1983) ...................................................................................11

*Ashcroft v. Iqbal*,
   566 U.S. 662 (2009) ...........................................................................................1, 7

*Atlantic Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990) ..............................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................1, 7

*Bilinski v. Keith Haring Found., Inc.*,
   96 F. Supp. 3d 35 (S.D.N.Y.), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015) .......................13

*Biocad JSC v. F. Hoffmann-La Roche*,
   942 F.3d 88 (2d Cir. 2019) ..................................................................................13

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,
   429 U.S. 477 (1977) ..............................................................................................12

*Cenedella v. Metro. Museum of Art*,
   348 F. Supp. 3d 346 (S.D.N.Y. 2018) ...................................................................13

*Concord Assocs., LP v. Entm't Props. Trust*,
   2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014), *aff'd*, 817 F.3d 46 (2d Cir. 2016) ....................10

*Concord Assocs., LP v. Entm't Props. Trust*,
   817 F.3d 46 (2d Cir. 2016) ....................................................................................9

*In re Crude Oil Commodity Futures Litig.*,
   913 F. Supp. 2d 41 (S.D.N.Y. 2012)........................................................................6

*Eastway Constr. Corp. v. City of New York*,
   762 F.2d 243 (2d Cir.1985).................................................................................12

*Electronics Communications Corp. v. Toshiba America Consumer Prods.*,
   129 F.3d 240 (2d Cir. 1997).................................................................................12

*G.K.A. Beverage Corp. v. Honickman*,
   55 F.3d 762 (2d Cir. 1995)...................................................................................12

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
   711 F.3d 68 (2d Cir. 2013)............................................................................12, 14

*Halebian v. Berv*,
   644 F.3d 122 (2d Cir. 2011)..................................................................................6

*Hinds Cty., Miss. v. Wachovia Bank, N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009)................................................................10

*Indyk v. Habib Bank Ltd.*,
   694 F.2d 54 (2d Cir.1982)...................................................................................15

*Jaffe v. Capital One Bank*
   2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ......................................................15

*Joseph et al. v. Corso et al.*,
   No. 902227-22 (N.Y. Sup. Ct.)....................................................................3, 8, 9

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)...............................................................................15

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
   470 U.S. 373 (1985).............................................................................................8

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012)................................................................14

*Stolow v. Greg Manning Auctions Inc.*,
   258 F. Supp. 2d 236 (S.D.N.Y.), *aff'd*, 80 F. App'x 722 (2d Cir. 2003)................11

*Tarrytown House Condominiums v. Hainjie*,
   161 A.2d 310 (1st Dept. 1990)............................................................................15

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001)...............................................................................12

- iii -

*Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*,
    736 F. Supp. 2d 661 (W.D.N.Y. 2010) .....................................................................6

*Yankees Ent. & Sports Network, LLC v. Cablevision Sys. Corp.*,
    224 F. Supp. 2d 657 (S.D.N.Y. 2002) ..................................................................14

*Yong Ki Hong v. KBS Am., Inc.*,
    951 F. Supp. 2d 402 (E.D.N.Y. 2013) ..................................................................14

**Statutes**

28 U.S.C. § 1738 ..................................................................................................................8

Donnelly Act, N.Y. Gen. Bus. Law §§ 340-347 ..............................................1, 13, 14

New York State Emergency Medical Services and Surprise Bill Act, N.Y. Fin.
    Servs. L. §§ 601–08 .......................................................................................... *passim*

No Surprises Act (Public Law 116-260) ............................................................. *passim*

Sherman Act, 15 U.S.C. §§ 1–2, et seq. (2007) ...................................1, 9, 10 11, 13, 14

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................................1, 7

Fed. R. Civ. P. 10(c) ............................................................................................................3

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 2, 6

PD.46114810.1

Defendant, MultiPlan, Inc. ("MultiPlan") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint ("Am. Compl.") filed by Plaintiff Long Island Anesthesiologists PLLC ("Plaintiff" or "LIA"), pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"), as follows:

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

This case has been brought by Plaintiff primarily as a federal and state antitrust case; however, as was the case with Plaintiff's original complaint, the Amended Complaint utterly fails to make out any such claims. This Court previously dismissed LIA's antitrust claims because LIA (i) failed to plead facts establishing an antitrust injury and (ii) failed to plead facts establishing a horizontal conspiracy between the Defendants. [*See* Dkt. 50]. The Amended Complaint fails to move the needle by rectifying the original complaint's fatal deficiencies, so dismissal is, once again, warranted. Further leave to amend should not be granted.

As MultiPlan will demonstrate herein, Plaintiff has still not satisfied the applicable pleading standards of the Federal Rules of Civil Procedure and further, has failed properly to allege essential elements of its claims. For this reason, the Amended Complaint against MultiPlan should be dismissed with prejudice.

Issues to be resolved by the Court in considering this Motion:

1.      Has the Plaintiff failed to meet the "plausibility" standard of Fed. R. Civ. P. 8(a), as articulated by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), thereby requiring the dismissal of all of its claims under Fed. R. Civ. P. 12(b)(6)?

2.      Subsumed within the foregoing, has Plaintiff failed to allege a Sherman Act § 1 or § 2 violation against MultiPlan, for various reasons, thereby requiring dismissal of those claims?

3.      Similarly, has Plaintiff failed to allege a Donnelly Act violation against MultiPlan, for various reasons, thereby requiring dismissal of that claim?

4. Has Plaintiff failed to make out a claim for unjust enrichment against MultiPlan?[1]

The answer to each of these questions is simple and straightforward "*yes*." There is no cognizable federal or state antitrust claim presented; there is no claim for unjust enrichment under New York law. Dismissal of the Amended Complaint with prejudice is therefore warranted.

## PROCEDURAL AND FACTUAL BACKGROUND

This case was brought in this Court by LIA on July 11, 2022. [Dkt. 1]. Thereafter, both MultiPlan and its co-defendant, United Healthcare Insurance Company of New York Inc. ("United"), filed Rule 12(b)(6) motions to dismiss. [Dkts. 30 and 31]. The Court granted the Defendants' motions in full and dismissed all of Plaintiff's claims without prejudice. [Dkt. 50]. Plaintiff then filed a motion for leave to file an amended complaint, which was granted by the Court on May, 15, 2024, through a text only docket entry. Plaintiff's Amended Complaint followed. [Dkt. 58].

As a result of the extensive prior briefing and rulings, the Court is aware of Plaintiff's general theories and claims for relief. In short, Plaintiff is seeking to obtain additional reimbursement for claims submitted to United based on Plaintiff's view that the New York Surprise Bill Law, rather than the federal No Surprises Act, applies to such claims. The decision to begin applying the federal No Suprises Act, instead of New York's Surprise Bill Law, when reimbursing Plaintiff for out-of-network anesthesiology services was made by the New York Department of Civil Service ("DCS") in January 2022 in its role as the sponsor of Empire Plan. Plaintiff has never plausibly alleged (because it cannot) that either United or MultiPlan played a role in that decision. Plaintiff also still fails to sufficiently allege an injury to competition or the competitive process, which is a requirement for cognizable antitrust claims. Likewise, Plaintiff's Amended Complaint fails to plausibly allege that MultiPlan is a horizontal competitor of United.

---

[1] In connection with the instant Motion, MultiPlan has included Plaintiff's unjust enrichment claim for purposes of completeness only. However, unlike Plaintiff's original complaint that vaguely asserted an unjust enrichment claim against the "Defendants," it now appears from the face of the Amended Complaint that Plaintiff is only asserting this claim against United. (*Cf.* Dkt. 1, ¶¶ 204-209 with Dkt. 58, ¶¶ 319-331).

The Amended Complaint also fails to plausibly allege the MultiPlan and United's relationship is anything other than a standard business relationship with MultiPlan serving as a surprise billing vendor for United.

As explained more fully in United's Motion to Dismiss the Amended Complaint,[2] the legal landscape on the propriety of DCS's decision to apply the federal No Suprises Act, instead of New York's Surprise Bill Law, has decisively changed over the course of this litigation. While DCS' decision may have been somewhat up for debate when Plaintiff's original complaint was filed and pending before this Court, since that time, the New York Supreme Court has conclusively ruled that DCS and the Empire Plan applied the law correctly. *See Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct.). MultiPlan and United cannot be held liable for ancillary services they provided the Empire Plan in support of the Empire Plan's now-confirmed correct application of federal law. Plaintiff is continuing to use this case as an opportunity to advance its meritless, and now rejected, positions.

In the Amended Complaint, Plaintiff alleges that it is a private anesthesiology practice located in West Islip, New York, and that it provides anesthesia services at Good Samaritan Hospital Medical center in that city. [Am. Compl., at ¶¶ 19-20]. It also allegedly provides anesthesia services at physician offices and surgery centers around New York and Long Island. [*Id*. at ¶ 24]. Plaintiff has alleged that, insofar as it relates to this case, it is an "out-of-network" provider. [*Id.* at ¶¶ 38, 117–119]. Thus, there is no agreement between Plaintiff and United (one of multiple third-party administrators of the Empire Plan) that sets specific rates of reimbursement for claims submitted to United in connection with services rendered by Plaintiff to Empire Plan beneficiaries. Instead, as alleged by Plaintiff, "[h]istorically, the Empire Plan reimbursed out-of-network physicians for providing covered medical services to Plan employees at amounts approximating the usual, customary, and reasonable (UCR) rate for the medical services in the

---

[2] United is also filing today a Motion to Dismiss the Amended Complaint. To the extent that the arguments raised by United apply to the claims asserted against MultiPlan, MultiPlan refers to, and by such reference, adopts and incorporates by reference the same fully herein. *See* Fed. R. Civ. P. 10(c).

geographic area where the services are provided." [*Id.* at ¶ 95]. Plaintiff further alleges that "[t]he UCR rate used by the Empire Plan for out-of-network reimbursement was determined using the benchmarking data bases maintained by FAIR Health . . . ." [*Id.* at ¶ 96]. Plaintiff also suggests that the enactment of the New York Surprise Bill Law in March 2015 maintained the *status quo* to Plaintiff's benefit and also provided a remedy for alleged under-reimbursement by United. [*Id.* at ¶¶ 107–116]. It is Plaintiff's dissatisfaction with more recent developments resulting in reimbursements lower than those previously received that have led to its dispute with United and has brought MultiPlan into the mix.

Plaintiff alleges that, following the enactment of the federal No Surprises Act in December 2020, and the statute becoming effective in January 2022, United determined that the Empire Plan was not subject to the New York Surprise Bill Law and would be treated like a non-governmental self-funded employee health plan under the No Surprises Act. [*Id.* at ¶¶ 124–127, 129]. As a result, Plaintiff alleges, the reimbursements it received from United were dramatically reduced. [*Id.* at ¶ 120]. Further, Plaintiff alleges that it "had no choice" but to employ the dispute resolution process of the federal law which it viewed less favorably than that in the New York statute. [*Id.* at ¶ 147]. Plaintiff goes on to allege that when it did so, it was informed by CMS, the responsible federal agent, that the "non-initiating entity," *i.e.*, the Empire Plan, had indicated that the federal dispute resolution process was not applicable. [*Id.* at ¶ 149]. Thereafter, Plaintiff began to receive "written communications from MultiPlan, identifying itself as working with [United]." [*Id.* at ¶ 151]. Plaintiff then alleges that, on United's behalf, MultiPlan engaged in a series of communications that were designed to pressure Plaintiff to accept a "Qualifying Payment Amount" that was "significantly less than the FAIR Health-determined UCR amount" by requiring a response in a short timeframe and without the opportunity to negotiate a higher reimbursement. [*Id.* at ¶¶ 145, 152–154]. Plaintiff asserts that such conduct was "the height of bad faith" and "particularly disingenuous." [*Id.* at ¶¶ 156–157].

MultiPlan, of course, disputes these allegations. However, for purposes of the instant Motion, these facts are less significant than those which Plaintiff attempts to set forth as the basis

for its antitrust claims; for it is the latter that the Court must scrutinize to determine whether this case can proceed. Although the Amended Complaint sets forth numerous paragraphs purportedly describing "anti-competitive harm" and "anti-competitive motives," [*id*. at ¶¶ 200-222], and further seeks to document the existence of a relevant product and geographic market in which the Defendants exercise market power, [*id*. at ¶¶ 244–251,[3] 252–254], Plaintiff's conclusory allegations lack the required specificity to plausibly and adequately meet its pleadings obligations with respect to any of these issues. The Amended Complaint also contains allegations of *United's* alleged market power, [*id*. at ¶¶ 255–265], but is silent as to any market power possessed or exercised by MultiPlan. Moreover, nowhere is it alleged that MultiPlan is a competitor of Plaintiff (which it is not), and nowhere is it alleged that United and MultiPlan compete with each other in any relevant market (which they do not). Finally, the Amended Complaint contains vague and conclusory allegations concerning harm to competition. [*Id.* at ¶¶ 285–297].

These sparse and inadequate allegations largely echo the deficient allegations that were contained in Plaintiff's original complaint. In a desperate attempt to paint MultiPlan in a bad light, Plaintiff now cites to a recent *New York Times* article that was published on the topic of MultiPlan and its role in the pricing of out-of-network claims. [*Id.* at ¶¶ 241–243]. The article contains allegations that MultiPlan vigorously disputes, and in any event, it is of no moment to the instant case, fails to make up for the inadequacy of Plaintiff's actual antitrust allegations, and otherwise should not be given any credence by the Court in ruling on the issues actually before it. To be clear, the *New York Times* article is totally detached from the Empire Plan, the federal No Suprises Act, the New York Surprise Bill Law, and the actual factual allegations contained in the Amended Complaint. It is irrelevant hearsay of which the Court should not take any notice,

The inadequacy of Plaintiff's allegations, as well as the lack of other allegations needed to make out valid claims, is ultimately fatal to Plaintiff's cause, once again. Plaintiff's Amended

---

[3] In paragraph 251 of the Amended Complaint, Plaintiff claims "the relevant 'product market' here is the New York metropolitan area." MultiPlan is perplexed by such an allegation since it is difficult to understand how a city and its environs can be a product.

Complaint must be dismissed in full, and this time, after having been given an opportunity to amend, that dismissal should be with prejudice.

## ARGUMENT

### I. Standard For Dismissal Under Rule 12(b)(6)

"The purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv,* 644 F.3d 122, 230 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir. 2006)). A court therefore must ordinarily confine itself to the four corners of the complaint and look only to the allegations contained therein. *Id.*

While "[t]here is no heightened pleading requirement in antitrust cases," *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 54 (S.D.N.Y. 2012), "a plaintiff must do more than cite relevant antitrust language to state a claim for relief." *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.,* 736 F. Supp. 2d 661, 667 (W.D.N.Y. 2010) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001)). "A plaintiff must allege sufficient facts to support a cause of action under the antitrust laws. Conclusory allegations that the defendant violated those laws are insufficient." *Id.* at 667–68 (quoting *Kasada, Inc. v. Access Capital, Inc.*, No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at *3 (S.D.N.Y. Dec. 14, 2004)).

Plaintiff has failed to satisfy the requisite pleading standard set forth above; the Amended Complaint should therefore be dismissed with prejudice.

### II. Plaintiff Has, Once Again, Failed to Meet the Plausibility Standard of *Twombly/Iqbal.*

Despite now having received the opportunity to amend its deficient original complaint, a fundamental flaw remains: Plaintiff has failed to present a plausible claim as required by *Twombly/Iqbal* alleging that MultiPlan (or United) has done anything improper or illegal by engaging in contractual dealings to control excessive healthcare costs.

Fed. R. Civ. P. 8 provides that a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings that are conclusory are not

acceptable; there must be factual allegations that are sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 550 (2007) (internal quotation marks omitted). "Rule 8(a) 'contemplates the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" *Id.* at 555 n. 3. For a complaint to be sufficient, the claim asserted must be one that, in light of the factual allegations, is at least, "plausible." *Id.* at 570. To present a plausible claim, the "pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (internal quotation marks omitted).

In *Iqbal*, the Supreme Court explained that courts considering motions to dismiss should adopt a "two-pronged approach" in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 566 U.S. at 679.[4]

Applying those working principles to the Amended Complaint in this matter leads to the inevitable conclusion that, as was the case with Plaintiff's original complaint, Plaintiff still has not made out a plausible case in connection with any of the Counts asserted against MultiPlan. All that is involved here is MultiPlan providing services to its client United, as the administrator of the Empire Plan, pursuant to an above-board commercial arrangement. MultiPlan has not been plausibly alleged to be (1) a competitor of Plaintiff; (2) a competitor of United; or (3) an entity that possesses or exercises market power in any properly defined relevant product or geographic market. Further, outside of conclusory allegations, MultiPlan has not been shown to be a co-conspirator, or an aider or abettor of United, as the essential elements of such claims are missing. Finally, there has been no proper allegation of an *antitrust* injury caused by MultiPlan. Careful

---

[4] Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint, "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Iqbal,* 566 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567).

perusal of the Amended Complaint discloses that there is no antitrust claim here, despite Plaintiff's attempt to craft one. Whatever Plaintiff's view of recent events, injury to competition attributable to MultiPlan has not been pled, nor is it discernable, let alone plausible.

### III.  *Joseph* **is Dispositive and Preclusive.**

As alluded to above, the New York Supreme Court has conclusively ruled that DCS's decision to apply the federal No Surprises Act instead of New York's Surprise Bill Law—resulting in lower reimbursements for Plaintiff and other anesthesiology practices that serve the Empire Plan as out-of-network providers—was the correct one. The New York Supreme Court held that "the Surprise Bill Law is not an applicable insurance law to the Empire Plan." *Joseph et al. v. Corso et al.*, No. 902227-22 (N.Y. Sup. Ct.), Dkt. 95 at 5–6. The *Joseph* decision precludes Plaintiff's antitrust claims in this case, which are predicated on an assertation that Plaintiff was harmed when the Empire Plan began applying reduced reimbursement rates under the federal No Surprises Act as opposed to New York's Surprise Bill Law. Thus, Plaintiff has no damages—and therefore no cognizable legal claim—if the Empire Plan's decision to apply the federal law was correct. And that is exactly what the *Joseph* court held. *Joseph*, No. 902227-22, Dkt. 95 at 6. This Court must give *Joseph* the same preclusive effect as it would have in state court.[5] Plaintiff does not get the re-litigate the exact same questions in this federal forum, when the New York Supreme Court has already spoken to the very issue.

Additionally, and as explained more fully in United's Motion to Dismiss the Amended Complaint, the *Joseph* court also found that "United cannot and does not, control the Empire Plan's coverage or reimbursement decisions." *Joseph*, No. 902227-22, Dkt. 95 at 5–6. In other words, DCS—not United—made the (correct) choice to follow the federal No Surprises Act. Thus,

---

[5] *See, e.g.,* 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

Plaintiff should be prevented from attempting to hold United responsible for the Empire Plan's application of federal law. MultiPlan is even further removed than United from the Empire Plan's decision-making process. As alleged, MultiPlan functions as United's contracted billing vendor for the Empire Plan. Thus, ***MultiPlan has no direct relationship or dealings with the Empire Plan whatsoever.*** It would strain all possible plausibility for Plaintiff to assert (which it has not even attempted to do) that MultiPlan controls the Empire Plan's coverage or reimbursement decisions.

In sum, *Joseph* precludes LIA from seeking to hold MultiPlan or United responsible for the Empire Plan's (correct) application of federal law.

## IV.    Plaintiff Has Still Failed to Make Out Its Sherman Act Claims.

Plaintiff alleges violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2. [Am. Compl., ¶¶ 299, 304–306, 309–311]. To survive a motion to dismiss, a Sherman Act claim must "(1) define the relevant geographic market, (2) allege an antitrust injury, and (3) allege conduct in violation of antitrust laws." *Concord Assocs., LP v. Entm't Props. Trust*, 817 F.3d 46, 52 (2d Cir. 2016). "For antitrust purposes, the concept of market has two components:  a product market and a geographic market." *Id.* "Taken together, the product and geographic components illuminate the relevant market analysis, which is essential for assessing the potential harm to competition from the defendants' alleged misconduct." *Id.* at 52–53. "And this analysis is equally applicable to claims made under Section Two of the Sherman Act, because 'without a definition of that market there is no way to measure the defendant's ability to lessen or destroy competition.'" *Id.* at 53.

Plaintiff fails to meet this standard. Other than conclusory allegations that lack appropriate economic justification, Plaintiff's allegations as to the existence of relevant markets are superficial, at best, and again, fail to lay the foundation for the existence of market power. That is incontestably the case with respect to MultiPlan, where there is not one allegation that shows MultiPlan has or exercises such power in ***any*** market. And again, the failure to plausibly allege that MultiPlan is a competitor of Plaintiff *or* United is fatal to Plaintiff's antitrust claims, especially that based on

Section 1 of the Sherman Act, where an agreement *between competitors* that unreasonably restrains trade is the *sine qua non* of a violation of the statute.[6]

Plaintiff also alleges an anticompetitive conspiracy. [*See, e.g.,* Am. Compl., ¶¶ 285, 289, 293, 296, 300–301]. At the pleading stage, a complaint claiming conspiracy, to be plausible, must plead "enough factual matter (taken as true) to suggest that an agreement was made," *i.e.,* it must provide "some factual context suggesting [that the parties reached an] agreement," not facts that would be "merely consistent with an agreement." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 556, 549, 557). "Conclusory allegations of 'participation' in a 'conspiracy' have long been held insufficient to state a claim." *Id.* at 182 (citations omitted). This precisely describes Plaintiff's allegations.

Moreover, Plaintiff has not established the necessary elements of a conspiracy. "Circumstances must reveal 'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" *Anderson News*, 680 F.3d at 183 (quoting *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984)); *Hinds Cty., Miss. v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 515 (S.D.N.Y. 2009) (where antitrust complaint names multiple defendants, plaintiff must "make allegations that plausibly suggest that each defendant participated in the alleged conspiracy."). "[D]efendants are entitled to know how they are alleged to have conspired, with whom, and for what purpose." *Concord Assocs., LP v. Entm't Props. Trust*, 2014 WL 1396524, at *23 (S.D.N.Y. Apr. 9, 2014), *aff'd*, 817 F.3d 46 (2d Cir. 2016). There is no plausible conspiracy alleged here.

Plaintiff now attempts to allege that MultiPlan "is a horizontal competitor of United because both MPI and United own and operate Preferred Provider Organization (PPO) networks." [Am. Compl. ¶ 163]. Despite the inaccuracy and misleading nature of that allegation, Plaintiff's conspiracy allegations in this case do not concern PPO networks or Plaintiff's relationships with PPO clients. Plaintiff's alleged market in this case is the provision of medically necessary

---

[6] One also searches in vain for allegations in the Amended Complaint that demonstrate such an unreasonable restraint of trade.

anesthesiology services. [*See* Am. Compl. ¶ 276]. There are no allegations that United and MultiPlan compete in that market. Likewise, at most, Plaintiff alleges that MultiPlan has contracted with United to provide certain billing support services. But a legitimate above-board business relationship does not by itself constitute an illegal Section 1 agreement, and Plaintiff offers no factual allegations showing a "conscious commitment" to engage in unlawful conduct. The Court previously recognized this issue with respect to Plaintiff's antitrust theories.[7] Without more, Plaintiff has not adequately alleged that there was some sort of meeting of the minds to engage in some sort of illicit reimbursement negotiation strategies.

Also, Plaintiff has not shown that MultiPlan is an aider and abettor of any alleged misconduct by United, even if the same were to be properly pled as a violation of Section 2 of the Sherman Act. In *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 250 (S.D.N.Y.), *aff'd*, 80 F. App'x 722 (2d Cir. 2003), the court stated that to "allege aiding and abetting, a plaintiff must claim: (1) a violation of law by the primary party; (2) knowledge of the violation by the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in achieving the primary violation." (citations omitted). *See also Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983) (same). None of those elements have been sufficiently alleged in the Amended Complaint. Therefore, there is no basis to proceed further if this is the theory which Plaintiff seeks to advance.

When the Court analyzed Plaintiff's original complaint, it correctly held, consistent with United and MultiPlan's arguments, that Plaintiff had failed to sufficiently allege antitrust injury. [Dkt. 50 at 8]. The Amended Complaint fails to rectify the original complaint's deficiencies on this issue. The law is clear that Plaintiff must demonstrate that it has antitrust standing, which Plaintiff still fails to do.

---

[7] *See* ECF Doc. 50 at 15 ("The only plausible finding suggested by the facts alleged in the complaint is that MultiPlan contracted with United to handle direct communication with providers as part of the federal IDR process with respect to claims for reimbursement related to treatment provided to patients insured by the Empire Plan. LIA does not allege any facts suggesting that United and MultiPlan conspired or agreed to work together to restrain trade unlawfully.").

"[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [the Court] must dismiss it as a matter of law." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75 (2d Cir. 2013). A plaintiff only has standing if he suffered an antitrust injury. *See G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766 (2d Cir. 1995); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 250 (2d Cir.1985). An antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990). "The injury should reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977). "An antitrust plaintiff must allege not only cognizable harm to [himself], but an adverse effect on competition market-wide." *Todd*, 275 F.3d at 213; *Electronics Communications Corp. v. Toshiba America Consumer Prods.*, 129 F.3d 240, 242 (2d Cir. 1997). The plaintiff must allege "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Id.* (emphasis in original).

"To satisfy the antitrust standing requirement, a private antitrust plaintiff must plausibly allege that (i) it suffered an antitrust injury and (ii) it is an acceptable plaintiff to pursue the alleged antitrust violations." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 156 (2d Cir. 2016). "To demonstrate antitrust injury, 'a plaintiff must show (1) an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the statute.'" *Arista Records LLC v. Lime Grp. LLC,* 532 F. Supp. 2d 556, 568 (S.D.N.Y. 2007) (quoting *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004)).

It is hard to fathom how Plaintiff can have suffered *antitrust* injury in this case, particularly if MultiPlan is alleged to be the source/cause of any damages suffered by Plaintiff that affect competition. In the Amended Complaint, Plaintiff now alleges that two other anesthesia providers also experienced lower reimbursement rates when the Empire Plan began applying the No Surprises Act. [Am. Compl. ¶¶ 200–21]. However, vague references to harm suffered by Plaintiff

and two other alleged providers says nothing about competition in a relevant market (whatever that market might be)—which might include thousands of anesthesiologist practitioners. Plaintiff has alleged nothing more than three anesthesia practices' dissatisfaction with reduced reimbursements offered under a single health plan for a limited category of surprise bills.

Moreover, it is impossible to discern how anything that MultiPlan is alleged to have done with respect to communicating with Plaintiff following United's guidance as to application of the federal No Surprises Act to the exclusion of the New York Surprise Bill Law is the cause of any damages allegedly suffered by Plaintiff, let alone any injury to competition in general (assuming the existence of a relevant market which, as has been shown, has not been properly alleged).[8] And Plaintiff fails to identify a single patient who has had to pay more for anesthesia services

For all of the foregoing reasons, to the extent that they even implicate MultiPlan, the First, Second and Third Causes of Action in the Amended Complaint should be dismissed with prejudice.

## V.     Plaintiff Has Failed to Make Out Its Donnelly Act Claim.

"New York's Donnelly Act . . . is modeled after the Sherman Act and 'should generally be construed in light of Federal precedent.'" *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 101 (2d Cir. 2019) (quoting *Gatt Commc'ns, Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 81 (2d Cir. 2013)); *see also Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 362–63 (S.D.N.Y. 2018) ("The Donnelly Act is generally coextensive with the Sherman Act unless state policy, differing language, or legislative history suggests otherwise."); *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 43 n.6 (S.D.N.Y.), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015) (analyzing Sherman Act and Donnelly Act claims collectively because there was no state policy or legislative history that would require a different interpretation of the Donnelly Act under the circumstances).

---

[8] Plaintiff fails to show that the Empire Plan's (correct) decision to apply the federal No Surprises Act will result in higher healthcare costs. And Plaintiff fails to connect any alleged acts of MultiPlan to the Empire Plan's decision.

PD.46114810.1

Insofar as Plaintiff seeks to make out a Donnelly Act claim, it must meet the same pleading requirements as are needed to establish its Sherman Act claims. "The standard for a well-pleaded Donnelly Act claim is the same as a claim under Section 1 of the Sherman Act." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012). "A party asserting a violation of the Donnelly Act must (1) identify the relevant product market, (2) describe the nature and effects of the purported conspiracy, (3) allege how the economic impact of that conspiracy is to restrain trade in the market in question, and (4) show a conspiracy or reciprocal relationship between two or more entities." *Yankees Ent. & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 678 (S.D.N.Y. 2002).

The Second Circuit has found that there is "no reason . . . to interpret the Donnelly Act differently than the Sherman Act with regard to antitrust standing." *Gatt Commc'ns, Inc.,* 711 F.3d at 81 (2d Cir. 2013); *see also Abbott Lab'ys v. Adelphia Supply USA*, No. 15CV5826CBALB, 2017 WL 5992355, at *9 (E.D.N.Y. Aug. 10, 2017) (citing *Gatt* and finding lack of standing for Donnelly Act claim for "the same reasons" that the plaintiff lacked antitrust standing to pursue its Sherman Act claims); *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 419 (E.D.N.Y. 2013) (citing *Gatt* and dismissing Donnelly Act and Sherman Act claims for lack of antitrust standing).

Because, as demonstrated above, the Amended Complaint lacks the necessary allegations to make out viable Sherman Act claims against MultiPlan, it follows that it fails to make out comparable claims under the Donnelly Act. Accordingly, Plaintiffs' Fourth Cause of Action should be dismissed with prejudice.

## VI.    Plaintiff Has No Unjust Enrichment Claim Against MultiPlan.

Finally, in its Fifth Cause of Action, Plaintiff asserts in general terms an unjust enrichment claim against United. Unlike in Plaintiff's original complaint, that vaguely asserted an unjust enrichment claim against the "Defendants," it now appears from the face of the Amended Complaint that Plaintiff is only asserting this claim against United. (*Cf.* Dkt. 1, ¶¶ 204-209 with Dkt. 58, ¶¶ 319-331). However, out of an abundance of caution, and to the extent that Plaintiff intends MultiPlan to remain subject to this claim, it should be dismissed against MultiPlan.

To be clear, Plaintiff has alleged no facts whatsoever that "it conferred a benefit upon [MultiPlan], and that [MultiPlan] will obtain such benefit without adequately compensating plaintiff therefor." *Tarrytown House Condominiums v. Hainjie*, 161 A.2d 310, 313 (1ˢᵗ Dept. 1990); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). "[O]n a theory of unjust enrichment, there must first be enrichment." *Indyk v. Habib Bank Ltd.,* 694 F.2d 54, 57 (2d Cir.1982); *see also Jaffe v. Capital One Bank* 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) (noting "[t]he absence of an allegation that Defendants *tangibly* benefitted at Jaffe's expense") (emphasis added). Here, there are no allegations that Plaintiff bestowed a benefit on MultiPlan.  Based on the foregoing, Plaintiff's Fifth Cause of Action should also be dismissed with prejudice to the extent Plaintiff intended the claim to remain asserted against MultiPlan.

## CONCLUSION

For the forgoing reasons, as well as those set forth in United's motion papers, Defendant MultiPlan, Inc., respectfully asks the Court to dismiss with prejudice the Amended Complaint of Plaintiff Long Island Anesthesiologists PLLC.

July 18, 2024                                   Respectfully Submitted,

*/s/ Errol J. King, Jr.*
Errol J. King *(pro hac vice)*
Katherine C. Mannino *(pro hac vice)* Taylor J.
Crousillac *(pro hac vice)* Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100 Baton Rouge,
LA 70802
Telephone: (225) 346-0285
Fax: (225) 381-9197
Email: errol.king@phelps.com
          katie.mannino@phelps.com
          taylor.crousillac@phelps.com

-and-

Craig L. Caesar *(pro hac vice)*
Phelps Dunbar LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130

Telephone: (504) 584-9272
Fax: (504) 568-9130
E-mail: craig.caesar@phelps.com

-and-

Aimee Leigh Creed
d'Arcambal Ousley & Cuyler Burk LLP
40 Fulton Street
New York, NY 10038
Telephone: (212) 971-3175
Fax: (212) 971-3176
E-mail: acreed@darcambal.com


Attorneys for Defendant MultiPlan, Inc.